RUDOLPH BERGMANN, Respondent, *v.* GEORGE JONES, Appellant.

On trial of an action for libel, where the alleged libelous publication contained charges injurious to plaintiff's character and to his business, and the complaint averred that by reason of the libel plaintiff had had been greatly injured in his business, by the loss of good-will and patronage, plaintiff was permitted to testify as a witness that immediately after the publication his business fell off, and to state the amount of his daily sales up to and immediately after such publication. *Held,* no error.

These questions were objected to generally. *Held,* defendant could not object on appeal that the complaint was not specific enough to authorize proof of special damage.

*Shipman* v. *Burrows,* (1 Hall, 442), *Hallock* v. *Miller,* (2 Barb. 630), *Tobias* v *Harland,* (4 Wend. 537), *Linden* v. *Graham,* (1 Duer, 670), distinguished.

Where evidence is received under a general objection, the ruling will not be held erroneous unless there are grounds of objection, which could not have been obviated had they been specified, or unless the evidence in its essential nature is incompetent.

Also *held,* that the evidence was sufficient to justify the submission of the question of special damage to the jury.

Also *held,* the fact that other persons had published the same libel, and

Statement of case.

that similar reports had been in circulation, in regard to plaintiff, did not affect his right to have the question so submitted.

Also *held*, that it was not error to allow plaintiff to testify to the efforts made by him to regain his business and to the hindrance he met with on account of the libel.

Where a publication is libelous *per se*, and is proved to be false, this is evidence sufficient to require the submission of the question of malice to the jury, and to warrant the allowance of exemplary damage ; and this, although defendant give evidence tending to prove no actual malice. Such evidence is to be considered by the jury, and it is for them to determine, in view of all the evidence, whether punitive damages should be allowed or not.

It is not a ground for a motion to dismiss the complaint in an action for libel that the innuendoes therein are ambiguous or uncertain ; any question as to their meaning may be submitted, upon proper requests, to the consideration of the jury.

Where the libelous article will bear the construction put upon it in the innuendo no other proof is necessary to show that defendant intended to make the charge against plaintiff imputed to him.

A publication, containing statements holding a person up to scorn or ridicule, and which degrade or disgrace him in the eyes of men, is libelous *per se*.

(Argued October 10, 1883 ; decided November 20, 1883.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made at the December term, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This was an action for libel. The material averments of the complaint are as follows:

" *Third.* — That on the said 12th day of March, the defendant, being the editor and publisher of said New York *Times*, a newspaper having a large circulation in the States of New York and New Jersey, and throughout the United States, as this plaintiff is informed and believes, maliciously composed and published of and concerning this plaintiff, in said newspaper, the false and defamatory article and matter following, to-wit :

' The gossips of Guttenberg, N. J., are excited over a mystery which has developed in their midst. The scene of the mystery is a little two-story frame building on Fifth street near Herman

avenue.  Rudolph Bergmann owns the structure.  In the front part he keeps a small grocery store.    The rear rooms he occupies as sleeping and eating-rooms.    His habits are miserly, and his wife, who left him some time ago, is said to have left because of the meagerness of his supplies, and he now lives by himself, with none to share his joys and sorrows.    The upper part of the building is occupied by a German tenant, who confesses that he has always looked on Mr. Bergmann with suspicion.    Beneath the building is a noisome cellar.  It is always covered with about two feet of water, and having been the depository of all the rubbish of the store and dwelling-house, has for some time emitted the most noxious vapors.    Two or three months ago the cow of one of his neighbors died, and the carcass lay for seven days unburied.    It was fast becoming a mass of corruption, when Bergmann, impelled by some motive not understood, cut it into pieces and cast the fragments into the cellar.    The tenant says that at the same time the putrid carcass was thrown into the cellar, he heard a noise as of a man splashing around in the water in the cellar.    It was the dead of night when these noises aroused him, and on making further observations, he saw Bergmann cut away the cellar stairs so as to prevent descent into it and bolt down the hatchway.    Convinced that the body of a man had been cast into the cellar, and that the carcass of the cow had been thrown in so as to confuse any who might search the place, the tenant told his story to Justice Schmidt.    The justice and constable Walker visited the house.    The cellar stairs were indeed gone, and the constable found it necessary to make his way into the flooded cellar with a ladder.    The stench was overpowering, but he walked around in the water almost up to his knees till he had learned enough to convince him that there was reasonable ground for the tenant's suspicion.    He says that while feeling around in the water, his hand came in contact with what he believes to have been a human arm, and afterward with teeth, which he judges were those of a human being.    Why he did not bring them out in the light of day does not appear.    The matter was brought to the notice of the town committee and an investigation will

be made.    Bergmann's neighbors now recall the fact that a year ago a man who boarded with Bergmann strangely disappeared, and a few days later his grocery was replenished with a new stock, thereby meaning and intending to accuse the plaintiff of the crime of murder, or of being accessory thereto, and meaning, and intending to have it understood and believed that the plaintiff had been guilty of the crime of murder, and had murdered and concealed a man in his, the plaintiff's cellar, or that the plaintiff was accessory to such crime and guilty as such, and meaning and intending to accuse the plaintiff of, and to have it understood and believed that he was guilty of a great and infamous crime, and meaning, and intending to accuse the plaintiff of odious and disgraceful conduct, and thereby injure and destroy his character and bring him into disrepute and disgrace.

*Fourth.* — That said article and matter so as aforesaid published, so far as it accused, charged or insinuated that this plaintiff had been, or was guilty of the crime of murder, or of any other crime, is utterly false and defamatory, and all such statements and insinuations therein contained to that effect, and all the statements and insinuations reflecting upon the character or conduct of this plaintiff to the effect that he had been guilty of odious, disreputable or disgraceful acts or conduct, are in like manner false and defamatory.

*Fifth* — That plaintiff has always been a good and worthy citizen and was never guilty of any of the criminal, infamous or disgraceful acts which are charged, stated or insinuated in the said libelous article, and had enjoyed the respect, confidence and esteem of the community where he lived and wherever he was known.    That by reason of the composition and publication of the matter aforesaid in such newspaper, the plaintiff has been brought into disrepute and disgrace and has suffered in his good name and reputation, so much so, that he is accosted and insulted in the streets by allusions to this defamatory matter, and has suffered and still suffers thereby.

*Sixth.* — That by means of said publication, the plaintiff

has been greatly injured in his reputation to his damage $20,000.

*Seventh.* — That by means of said publication, the plaintiff has also been greatly injured in and about his business as a merchant by the loss of good-will and patronage, and suffered pecuniary loss thereby, to-wit: to the amount of $5,000."

The facts, so far as pertinent to the questions discussed, are stated in the opinion.

*B. F. Einstein* for appellant. In an action for libel, a party claiming for loss of patronage must set out in his complaint the names of the persons whose patronage he lost. (*Shipman* v. *Burrows,* Hall, 399, 411, 412, 419, 420 ; *Hallock* v. *Miller,* 2 Barb. 630 ; 2 Phil. Ev. 248 ; *Hartley* v. *Herring,* 8 Term R. 133 ; *Tilk* v. *Parsons,* 2 C. & P. 201 ; *Tobias* v. *Harland,* 4 Wend. 537 ; *Linden* v. *Graham,* 1 Duer, 670 ; *Havemeyer* v. *Fuller,* 60 How. Pr. 316, 322 ; *Kendall* v. *Stone,* 5 N. Y. 14 ; *Knickerbocker L. Ins. Co.* v. *Ecclesine,* 34 Supr. Ct. 76 ; *Jutte* v. *Hughes,* 67 N. Y. 267 ; *Stafenhorst* v. *Am. Manuf. Co.,* 46 How. Pr. 510 ; *Herrick* v. *Latham,* 10 Term R. 281.) To entitle a party to recover special damages they must appear to be the legal and natural consequence of the wrongful act charged. (*Crain* v. *Petrie,* 6 Hill, 522 ; *Hastings* v. *Palmer,* 20 Wend. 225, 226 ; *Olmstead* v. *Brown,* 12 Barb. 657, 662 ; *Beach* v. *Ranney,* 2 Hill, 314 ; *Terwilliger* v. *Wands,* 17 N. Y. 54, 57 ; *Schille* v. *Brokhans,* 80 id. 614 ; *Masterton* v. *Village of Mt. Vernon,* 58 id. 391 ; *Church* v. *Howard,* 79 id. 415, 423.) If the meaning of the words in an alleged libel is ambiguous, or the sense in which they were used is uncertain, and they are capable of both an innocent and an injurious interpretation, it is for the jury to determine, upon all the circumstances, in what sense they were used. (*Sanderson* v. *Caldwell,* 45 N. Y 398, 402, 403 ; *Lewis* v. *Chapman,* 16 id. 369 ; *Snyder* v. *Andrews,* 6 Barb. 43 ; *Edsall* v. *Brooks,* 3 Robt. 294 ; *Dalloway* v. *Terrell,* 26 Wend. 388 ; Townshend on Slander and Libel, § 338 ; *Maguire* v. *Knox,* 5 Irish Com. L. 408.) The court erred in charging the jury that it was in the

discretion of the jury to give the plaintiff exemplary damages. (*Sanders* v. *Evening Mail Ass'n,* 9 Hun, 288, 294, 295; *Taylor* v. *Church,* 8 N. Y. 452, 460; 1 E. D. Smith, 292; *Bennett* v. *Smith,* 23 Hun, 50, 53; *Hamilton* v. *Eno,* 81 N. Y. 116, 127; *Fry* v. *Bennett,* 4 Duer, 257; *Hun* v. *Bennett,* 4 E. D. Smith, 659.)

*Benjamin Estes* for respondent. The article complained of is libelous *per se.* (Townshend on Slander and Libel [3d ed.], 262, § 176; Starkie on Slander [Wend.] 169; 2 Addison on Torts [Wood's ed.], 307, 311; *Cooper* v. *Greeley,* 1 Denio, 359; *Cramer* v. *Riggs,* 17 Wend. 209; *Moore* v. *Bennett,* 48 N. Y. 472, 477; *Edsall* v. *Brooks,* 26 How. Pr. 431.) The article, being libelous *per se,* is therefore actionable *per se,* and no proof of actual malice or of damage is required. Both malice and damage are implied. (2 Add. on Torts [Wood's ed.], 311, § 1090; *Rout* v. *King,* 4 Wend. 114, 136; 7 Cow. 613; *Gillman* v. *Lowell,* 8 Wend. 578; *Sanderson* v. *Caldwell,* 45 N. Y. 398; *Terwilliger* v. *Wands,* 17 id. 49, 54; *King* v. *Cale,* 7 Cow. 613, 620; *Darry* v. *People,* 10 N. Y. 138; *Viele* v. *Gray,* 10 Abb. Pr. 7; *Fry* v. *Bennett,* 4 Duer, 247; *Howard* v. *Sexton,* 4 N. Y. 157.) The jury in this case had the right to give exemplary or vindictive damages in addition to the actual damages sustained by plaintiff. (*Samuels* v. *Evening Mail Ass'n,* 75 N. Y. 604; *King* v. *Root,* 4 Wend. 139; *Taylor* v. *Church,* 8 N. Y. 461; *Tillotson* v. *Chatham,* 3 Johns. 56.) Plaintiff having alleged injury to his business, in his complaint, evidence tending to prove such allegation was properly admitted. (*Terwilliger* v. *Wands,* 17 N. Y. 60.) The evidence offered relating to what occurred before some pretended public body in New Jersey was properly rejected. (2 Addison on Torts [Wood's ed.], 336, § 1107; Townshend on Slander and Libel, 398, § 228; *Hasmer* v. *Lovland,* 19 Barb. 116; *Perkins* v. *Mitchell,* 31 id. 461; *Cobman* v. *Southwick,* 9 Johns. 49; *Woodward* v. *Paine,* 15 id. 493; *Wilson* v. *Boerum,* id. 286; *Powell* v. *Walters,* 17 id. 176; *Van Ness* v. *Hamilton,* 19 id. 368; *Fry* v. *Bennett,* 5 Sandf. 68–75; *Andrews* v. *Van-*

*duzer,* 11 Johns. 349; *Daly* v. *Byrne,* 1 Abb. N. C. 160; *Hayes* v. *Tibbetts,* 2 Abb. [N. S.] 97, 102; *Bush* v. *Prusser,* 16 N. Y. 361; *Hutchkiss* v. *Oliphant,* 2 Hill, 510; *Dale* v. *Lyon,* 10 Johns. 447.) An injury to a person's good name, good-will of business, or reputation is an injury to property. (*Samuels* v. *Evening Mail Ass'n,* 75 N. Y. 604; *Shoe and Leather B'k* v. *Thompson,* 18 Abb. Pr. 413; *Knickerbocker L. Ins. Co.* v. *Ecclesine,* 34 Sup. Ct. 97, 106; *Seeley* v. *Engell,* 13 N. Y. 548; 6 Bosw. 181; *Masterton* v. *Village of Mt. Vernon,* 58 N. Y. 395, 396.)

MILLER, J. Upon the trial of this action objections were made, by the defendant's counsel, to certain questions which were put inquiring as to the losses sustained by the plaintiff in his business by reason of the publication made by the defendant and set forth in the complaint. The plaintiff was asked, whether, immediately after the publication of the article alleged to be libelous, his business fell off, which question was objected to, the objection overruled, and exception taken by the defendant. The plaintiff answered that it did. He then testified as to the amount of his sales *per diem* up to the time of the publication of the article in question, and he was then asked the amount of his sales immediately after said publication. The question was objected to, the objection overruled and an exception taken by defendant. The plaintiff then answered, stating what his sales were on week days and what on Sundays. The question was then asked him as to the amount of sales on Sundays immediately before the publication, which question was also objected to, the objection overruled, and exception taken, and the witness answered. The article was libelous on its face, and assailed the character of the plaintiff individually and as the proprietor of a grocery store. In the complaint the plaintiff claimed damages to his reputation, by reason of the alleged libel, to the amount of $20,000. He also alleged that by reason of the publication he had been greatly injured in his business as a merchant by the loss of good-will and patronage, and had suffered pecuniary loss thereby, to-wit: to the amount of $5,000.

The testimony objected to was offered evidently for the purpose of showing losses sustained under the last allegation, and it tended to show such losses. There can be no serious question but that a party injured has a right to recover special damages where a claim for the same is properly made in the complaint. The objections of the defendant's counsel to the questions put were general in their character, and stated no specific ground upon which the testimony should be excluded. The counsel for the appellant claims that the proof of special damages was not admissible under the pleadings because it was not properly pleaded. Had this point been taken on the trial, and the objection held to be valid, the judge had the power to allow an amendment of the pleadings upon such terms as would be proper and just, and had he done so the objection might have been obviated. The rule is well established that where there is a general objection to evidence and it is overruled and the evidence is received the ruling will not be held erroneous, unless there be some grounds which could not have been obviated had they been specified, or unless the evidence in its essential nature be incompetent. (*People* v. *Beach*, 87 N. Y. 508.) The defendant having failed to specify any such ground upon the trial he is not in a position to urge the same upon this appeal.

Numerous decisions are cited by the defendant's counsel to sustain the position that the evidence objected to was inadmissible. From an examination of the cases referred to it appears that none of them are analogous to the one at bar. In *Shipman* v. *Burrows* (1 Hall, 442) the alleged slanderous words were not actionable *per se*, and were spoken of the defendant as a shipmaster, the plaintiff alleging that by reason of the same the insurance companies of the city of New York refused to insure any vessel commanded by the plaintiff or any goods laden on board the vessel by him commanded. It was held that evidence that the New York insurance companies refused to make such insurance was improperly received. The decision of the court was based upon the ground that the averments in the declaration were not sufficiently definite to allow

such evidence to be given on the part of the plaintiff. This rule might well apply in the case cited, where it appeared that there was no difficulty in showing the company or companies which had refused to insure the vessel. It may also be remarked that as no point was made to the contrary it must be assumed that the specific objection was taken upon the trial that the complaint was insufficient, and hence the point now made did not arise. Nor should it be overlooked that at the time of the decision in the case cited the right to grant an amendment to the pleadings upon the trial did not exist and was not recognized as is the case under the present system of pleadings and practice, and hence the plaintiff lost no rights if the objection urged was not distinctly taken upon the trial. In *Hallock* v. *Miller* (2 Barb. 630) special damages were claimed, giving the names of persons specifically, and proof was offered as to other persons not named in the declaration, which was excluded. It is evident that the distinct point was taken that the complaint was insufficient to admit the evidence and hence the case is not in point. In *Tobias* v. *Harland* (4 Wend. 537) the case arose upon a demurrer, and the question was distinctly raised whether special damages were sufficiently alleged in the declaration. In *Linden* v. *Graham* (1 Duer, 670) the action was brought for slander of title, and the complaint alleged that the speaking of the slanderous words prevented the plaintiff from procuring a loan upon a mortgage upon real estate, but did not state the name of any person who would have made a loan. On demurrer the court held that the complaint did not sufficiently allege the special damages. It will be seen that the distinct point was presented as to the sufficiency of the allegations contained in the complaint. In none of the other cases cited is it held that an objection to proof of special damages by the loss of. customers, on the ground that they are not named in the complaint, is available where this ground is not specifically stated, and hence the distinct point now raised was not presented. Cases may arise where, from the nature of the business in which the party is engaged, it would be almost impossible to prove by witnesses,

who had dealt with the party bringing the suit, the loss of
trade. The plaintiff's business in this case was evidently a
very small one, in which it would be very difficult to prove
damages of any specific amount, arising out of the loss of the
trade of a single customer and under such circumstances, after
proof of the circulation of the libel and evidence tending to
show the injury to plaintiff's business, testimony establishing a
falling off of his business might be competent, not as distinct
proof of loss, but as bearing upon the question of whether the
plaintiff had sustained any damage. It is true such evidence
would not be very strong, but from the necessity of the case
we think, it might be competent to submit to the jury for what it
was worth in a case of the character of the one at bar, without,
alleging in the complaint specifically the names of the per-
sons whose custom had been lost by means of the alleged
libelous publication.

It is also insisted that the judge erred in charging the jury
that they could give the plaintiff damages for loss of business,
and in refusing to charge at defendant's request that "the jury
cannot award damages to the plaintiff for loss of business, no
special damage having been proven." We think there was
no error in the portions of the charge referred to, or in the re-
fusals to charge as requested. The complaint alleged an
injury to the plaintiff's business by reason of the publication of
the alleged libel, and there was proof establishing the fact that
the business had diminished since that time. The testimony
in this respect tended to show a loss to plaintiff by reason of
the alleged libelous publication, although there was no direct
proof as to the amount of profits the plaintiff had realized on
his sales, or the amount of the losses he had sustained. It can-
not be said, we think, that there was no evidence, whatever, to
show damages to the plaintiff's business, and, under the circum-
stances, it was a fair question for the jury to consider the proof
as to losses in business, in determining what amount, if
any, should be awarded in favor of the plaintiff for his
damages. The charge as made covered this question, and
fairly submitted it to the consideration of the jury. None of

the authorities cited by the appellant's counsel in this connection are in conflict with the views we have expressed, and there is no ground for claiming that the plaintiff failed to give some evidence which established losses to his business which followed as a necessary consequence to the publication of the alleged libel. The sensible diminution of his sales after the publication was some proof to establish his claim for special damages, and unless the jury was satisfied from the evidence that it might be attributable to other and different causes it could not be overlooked by them in determining the amount. There was certainly evidence which tended to show that the injury to plaintiff's business was attributable to the alleged libelous publication, that it was the cause of the loss of business to him.

The evidence which showed that other papers had published the alleged libel, and that similar reports had been circulated in regard to the plaintiff was to be considered by the jury, and it is fair to assume that the defendant was not made liable in damages for other publications, or for the acts and conduct of other parties. The failure of the plaintiff to show the actual amount of the profits was a defect in his proof which might properly be urged before the jury, and it is not to be assumed that a verdict was rendered in this respect for a larger amount of damages than the evidence justified.

It is also insisted that the court committed an error in charging the jury that it was in their discretion to give the plaintiff exemplary damages. The particular part of the charge in this respect to which exception is taken is to the decision of the court in favor of several requests made by the counsel for the plaintiff. The first request lays down the rule that in an action of libel the plaintiff gives evidence of malice, whenever he proves the falseness of the libel, that it is then a question for the jury to say whether it is of such a character as to call for punitive or exemplary damages, and that the question is not taken from them, because the defendant gives evidence which tends to show that there was in fact no actual malice. It must be borne in mind that the article in question was libelous *per se.*

The judge had so charged just prior to the request, and the portion of charge under consideration must be taken as applicable to the case before the court and jury. The second request asked the court to charge that the falseness of the libel being proof of malice sufficient to uphold exemplary damages, the right to recover them rests in the act done, in the publication of the false libel, and that the publisher is chargeable with the legal consequences, which it is the right of the jury to redress by imposing reasonable damages beyond any actual injury shown, and the court responded that he had charged this in substance in the direct language of the law. The third request was as follows: " That in an action for libel · the falseness of the libel is an evidence of malice, and it is a question for the jury whether the malice is of such a character as to call for exemplary or punitive damages; that is, such an amount of damages as may be reasonable beyond any damages or injury actually shown." The falsity of the libel is sufficient proof of malice to uphold exemplary damages, and plaintiff's right to recover them is in the discretion of the jury. When the falseness of the libel is proved, as a general rule, it is sufficient to warrant the jury in giving exemplary damages. This principle is upheld in *Samuels* v. *Evening Mail Association* (75 N. Y. 604), where the decision of the General Term, reported in 9 Hun, 288, is reversed upon the dissenting opinion of DAVIS, P. J. The above requests to charge are in the language of a portion of that opinion, and neither of them go beyond that. The plaintiff having proved the libel, which the defendant in his answer admitted he published, and its circulation, and it appearing that it was false and untrue, the plaintiff's cause of action was established, and it only remained for the jury to determine, in view of all the facts presented upon the trial, what damages should be awarded. Upon the charge made against the plaintiff in the article published, the falsity of which was made to appear, it was for the jury to say in their discretion whether punitive or exemplary damages should be awarded. The proof on the part of the defendant that there was no actual malice was to be considered in the deter-

mination of the question whether exemplary damages should be given. We have examined the authorities cited by the defendant to sustain his position, and we think that none of them are in conflict with the rule laid down in that portion of the charge which has been discussed. Some other questions are made as to the rulings of the court in reference to the admission of evidence. The question put to the plaintiff as follows: "State what efforts you made to regain your business, and what opposition or hindrance you met with on account of this libelous article," was properly admitted. The plaintiff having proved that the amount of his receipts had largely diminished since the publication of the alleged libel, he had the right to show that he had endeavored to counteract its effect, and in doing this he met with opposition which was attributable to the publication of the libelous article in question.

We think that the motion to dismiss the complaint was properly denied. It was made upon the grounds that the article did not bear the construction placed upon it by the innuendo in the complaint, that is, that the defendant intended to charge the plaintiff with murder, etc., and second that there is no proof that the defendant intended to so charge the plaintiff. The article reflected severely upon the character and conduct of the plaintiff, and the complaint, after setting forth the libel, contained the allegation that he thereby meant to accuse the plaintiff of the crime of murder, or being accessory thereto, and meant and intended to have it understood that the plaintiff had been guilty of the crime of murder, and had murdered and concealed a man in his cellar, or that he was the accessory of such crime. These allegations sufficiently state that the alleged libelous matter charged the plaintiff with murder, and it is difficult to see upon what ground it can be claimed that, upon a motion to dismiss the complaint, they were not sufficient. It is no answer to say that they were ambiguous and uncertain, for even if such was the case any question as to their meaning might be submitted, upon proper requests, to the consideration of the jury. This not being done we think that the defendant is not in a position to claim that there was

error in denying the motion to dismiss the complaint upon the first ground stated. Neither can it be said, as the case stands, that there was no proof that the defendant did intend to charge the plaintiff as alleged in the complaint.

In the cases cited by the appellant's counsel to sustain the point last urged, the distinct question was raised and left to the jury as to the meaning of the alleged libelous publication. (See *Sanderson* v. *Caldwell*, 45 N. Y. 398; 6 Am. Rep. 105, and *Maguire* v. *Knox*, 5 Irish R. Com. L. 408.) In the case at bar the judge left it to the jury to determine whether the charge of murder was imputable to the defendant, and in this respect the charge was favorable to him. The subsequent portion of the charge, that any thing which held the plaintiff up to scorn or ridicule, any thing that degrades or disgraces him in the eyes of men is libelous, and that the article was libelous *per se,* was not inconsistent with the portion last referred to, and it cannot be said on that ground that the judge took away from the jury the right to consider the article and to determine whether that charged the plaintiff with murder. It might well be that the jury found that murder was not charged and still that the article in question was libelous *per se* in other respects.

We have examined all the other questions raised and in none of them do we find any ground for reversing the judgment.

The judgment should be affirmed.

All concur.

Judgment affirmed.