(47 Misc. Rep. 174.)

### LAMBERTINI v. SUN PRINTING & PUBLISHING CO.

(Supreme Court, Special Term, Kings County.   May, 1905.)

**1. LIBEL—COMPLAINT—SUFFICIENCY.**

A complaint in libel alleged the publication of a newspaper article making plaintiff ridiculous and charging him with membership in a society of assassins, blackmailers, and kidnappers, and that he had tattooed on his back the "Black Hand," the name of such society. *Held*, that the complaint was good, though the article in question bore no such meaning.

**2. SAME—CONSTRUCTION.**

Where a complaint in libel singles out a meaning and complains of that only, and in that way excludes all other meanings, it is based on and limited to the meaning so complained of only.

Action by Rocco Lambertini against the Sun Printing & Publishing Company.   Demurrer to complaint overruled.

The alleged libel is as follows:

#### "Black Hand on His Back.

"Janitor Lambertini Thought It was a Curse, Instead of a Wicked Joke.

"Rocco Lambertini, janitor of the civil court at Second avenue and First street and a protege of Timothy D. Sullivan, was marked with a black hand yesterday and it was several hours before his friends could restore him to a normal condition.   In Essex street he announced that he would aid his fellow countrymen in the Italian Chamber of Commerce in running down the Black Hand kidnappers.

" 'Why, you belong to it yourself,' said big Jack Martin,   Martin Engel's manager.   'A man told me he met you in a Turkish bath and saw the black hand tattooed on your back.'

" 'Liar, thief, villain !' shouted Rocco.

" 'I will take the man's word,' said Martin.

" 'He swears he saw the mark.'

" 'Here is $20,' shouted Rocco, 'to prove he is a liar.'

" 'Go downstairs in the basement,' said Martin, 'and if there is not a black hand on your back I will lose the bet.'

"A committee of the Essex Market Bar Association followed Rocco to the basement.   While he was removing his shirt and undershirt Martin blackened his right hand with burned cork.

" 'You scoundrels, show me where there is a black hand on my back,' said Rocco when he was stripped to the waist.

" 'Right there,' said Martin, as he slapped him on the back.

"The committee agreed with Martin, but to convince Rocco they had to procure two mirrors.   When he saw the imprint on his back he turned pale and shouted:

" 'There must be a curse on me, a curse on me !   I swear that the mark was not there this morning.   I denounce them.   Remove it from me, even if you have to cut off my flesh.'

"Rocco refused to be consoled, and it required the services of several of the crowd to restrain him.

"When he was finally quieted the black mark was removed and he was told it was a joke, but the committee which celebrated with his money last night unanimously decided that he lost the bet."

Joseph Pascocello, for plaintiff.
Franklin Bartlett, for defendant.

GAYNOR, J.   The newspaper article complained of is no doubt defamatory for making the plaintiff appear ridiculous, which is a distinct

head of the law of libel. Such liberties cannot be taken with people with impunity.

But the trouble is to ascertain whether the plaintiff complains of the article in that sense at all; whether that meaning has not been excluded by the complaint; for if the complaint be not based on that meaning there can be no recovery on that meaning.

The plaintiff takes the article seriously instead of as a joke on him, which it obviously is, and complains of it on the ground that it charges him with membership in a society of "assassins, murderers, blackmailers, thieves and kidnappers," and that he really has tattooed on his back the black hand, which is the emblem and name of the society; whereas it will not bear that meaning.

When the complaint in an action for defamation singles out a meaning and complains of that only, and in that way excludes all other meaning, the complaint is certainly based on and limited to the meaning so complained of only. This is so obvious a proposition that it will not bear argument in our learned profession. The defendant has only to answer by way of a defense in justification or in mitigation to the meaning which alone aggrieves the plaintiff, and of which alone he therefore complains.

This is a very different thing to the ordinary innuendo, whose office is only to heighten the degree of meaning, not to state some other distinct meaning, and exclude all other meaning, as I have recently had to point out. Hilder v. Brooklyn Eagle, 45 Misc. Rep. 165, 91 N. Y. Supp. 983. The case of Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725, may be hastily taken for much more than it decides.

But after reading the recent decision on appeal in Wuest v. Brooklyn Citizen, 38 Misc. Rep. 1, 76 N. Y. Supp. 706, and 102 App. Div. 480, 92 N. Y. Supp. 852, we must all be in doubt as to whether the foregoing rule is any longer alive; or, may be, whether it is not misunderstood.

In that case the words complained of, the plaintiff being a woman, were:

"She went to a prison for an operation. She sank so low. She said it cost five dollars, and that her screams were heard all over the block."

The complaint most carefully alleged the defamation to be that the charge was "the commission of a crime" by her, and her punishment therefor by "incarceration in a penal institution."

On appeal, however, it was held that the dismissal of the complaint on the alleged meaning was error, for the reason that the plaintiff was entitled to go to the jury on the charge of abortion, although the plaintiff had made no complaint on that head, but carefully avoided doing so, and the defendant had of course not pleaded in its answer to any such charge; as indeed what defendant would commit the folly of answering something not charged against him? The learned court went further, and held that the word "prison" must be read and understood as "person," thus changing the libel complained of to one not complained of at all; for the complaint was based on the charge of imprisonment only.

Moreover, on the question of whether the words, with "prison" changed to "person," impute an abortion, they are certainly equivocal,

for they may mean some innocent operation; and it is an every day rule that in the case of equivocal words, i. e., words capable of both a harmless and a defamatory meaning, the plaintiff has to single out and allege the latter meaning in his complaint in order to state a cause of action. Smid v. Bernard, 31 Misc. Rep. 35, 63 N. Y. Supp. 278; Taylor v. Wallace, 31 Misc. Rep. 393, 64 N. Y. Supp. 271; Odgers, p. 112. It is not for the defendant to attribute a defamatory meaning to his words, capable of a harmless meaning; it is for the plaintiff to do so by his complaint.

In view of this decision, however, I hesitate. I may properly point out that it seems to be all awry, for the mind of our learned profession is not servile; but I must also pay it some heed.

The demurrer is overruled.