## August Nolte v. John A. Herter.

1. SLANDER—*Where the Law Implies Malice.*—Where the words charged are actionable *per se*, the law implies malice and injury and does not require proof of any actual damage to warrant a verdict for more than merely nominal damages. From the nature of the case the amount of damages is not susceptible of definite proof, but must be left to the judgment of the jury upon all the circumstances surrounding it.

2. SAME—*Where the Words are Ambiguous.*—Where the words charged are ambiguous, it is competent to prove by the bystanders the sense in which they understood them.

3. SAME—*Mitigation of Damages.*—In actions for slander, evidence in mitigation of damages must be of facts or circumstances which tend to disprove malice, but do not tend to prove the truth of the charge.

Trespass on the Case, for slander. Appeal from the Circuit Court of Calhoun County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed June 24, 1896.

HAMILTON & HAMILTON and JOHN F. NOLTE, attorneys for appellant.

T. J. SELBY and FRANK A. WHITESIDE, attorneys for appellee.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

In this action for slander plaintiff recovered judgment on a verdict for $500, from which the defendant appealed.

The parties lived about a mile apart on their respective farms, which adjoined, near Brussels, and had been on friendly terms for many years. In 1893 a Creamery Company was organized by the farmers in the neighborhood, of which appellant was a director, and appellee the president. On the 26th of May, 1893, a meeting of some twenty of those interested was held to consider its affairs, which were not prosperous. The property was advertised for sale on execution, and the question was whether to let it be sold or pay the debt and go on. Appellant, who appeared to be much dissatisfied with the situation, in the course of the discussion said there was humbug in the business; that if it had been properly managed, and the books properly kept there would be money enough on hand to pay. Appellee, seeming irritated by this reflection, answered that if the rest had brought as poor milk as his (appellant's) there would have been less on hand than there was; that he had skimmed it, and it yielded only two instead of four per cent of butter; and then appellant said, "You stole sour milk from the creamery at night, and I can prove it," which were the words charged in the declaration, and shown to be a correct translation of those he used in the German language, well understood by all the persons present.

It appeared that at the beginning of each month the

directors put a price on the sour milk, from six to eight cents per can of eight gallons, and that the stockholders could take as much as they wanted at the price so fixed. If any was left, the president had to take it, at one cent less. He did take it, every month except one, when it was taken by appellant.

On previous occasions appellee had made to appellant substantially the same complaint and charge in reference to his milk. He says he had applied the testers to it. Appellant, the only witness called on his behalf, did not deny that the milk he brought was, in fact, inferior in quality. While expressly denying that he watered, and perhaps, by fair implication, that he skimmed it, he says that " the water was low and the pasture poor," which made it " not so rich any more," and that because of appellee's repeated complaint of it, about two weeks before the meeting, he ceased to bring any to the creamery.

Every material fact disclosed by the record touching the merits of the case is believed to be included in the foregoing statement. There was no conflict in the evidence respecting any one of them.

It is claimed that the words charged were spoken by appellant in a sudden heat of passion, in an angry altercation provoked by appellee; that in such case no more than nominal damages should be awarded, unless more were actually proved; and therefore that the refusal or modification of the instructions asked to that effect was error.

There was no evidence tending to prove that the altercacation was so provoked. It does not appear that appellee on that occasion had said one word that could be construed by appellant as personally offensive to him or in any way unbecoming. It arose out of appellant's accusing remark which must have been understood to import that there had been mismanagement by the president and secretary, chargeable more to willfulness and dishonesty than to negligence or ignorance, and called for a resentful answer. " Humbug " is an imposition, imposture, deception; and as a verb, signifies to impose upon, to cozen, to swindle; all

implying intention to misrepresent, by the assertion of what is not the actual condition or the suppression or concealment of what is. In this altercation appellant was clearly the aggressor and provoker.

Every instruction based on the hypothesis assumed might therefore have been refused for want of evidence to support them. The court, however, only modified them according to the rule in Miller v. Johnson, 79 Ill. 58, to the effect that the fact supposed, if proved, was proper to be considered in estimating the damages and in mitigation thereof; but refused to hold, upon any view taken of the evidence, that the jury " should find " or would be " warranted " or " justified " in finding only nominal damages, and left the amount to be determined by their own judgment upon the circumstances shown, after advising them of the proof required to authorize a finding of exemplary or vindictive damages.

Where the words charged and proved are actionable *per se* the law implies malice and injury, and does not require proof of any actual damage to warrant a verdict for more than merely nominal damages. From the nature of the case the actual amount is not susceptible of definite proof, but must be left to the judgment of the jury upon all the circumstances. Spencer v. McMasters, 16 Ill. 408; Young v. Baker, 44 Id. 42.

The broader claim is also urged, that although actionable on their face, the words referred and were understood by all those who heard them to refer to well known acts of appellee which were not nor could be regarded by them as criminal or even wrongful, namely, his taking of sour milk from the creamery under the order made and at the price fixed by the directors from month to month; and therefore that they were not slanderous, and the verdict should have been for the defendant.

The words and the circumstances conclusively forbid the idea of such a reference or understanding. That appellant, smarting under an unjust accusation of conduct both fraudulent and criminal, made in the presence and hearing of so

many neighbors and associates, who were the parties he was charged with having so wronged, angrily retorted that he could prove his accuser had done what was already well known to all concerned and needed no proof, which was done by their authority, and was right and proper in itself and in their interest, is a supposition that in our judgment was not to be entertained. But if the evidence raised the question it was for the jury to determine it.

Two of appellee's witnesses testified, on cross-examination, that they did not believe the charge so made, and were asked whether any one else there believed it, so far as they knew; to which objection was made and sustained. It does not appear that there was any expression there by the others in relation to their belief. If these questions would have been proper at any stage of the trial, which we do not concede, they were not proper in cross-examination. The cases cited as authority for it—Nelson v. Borchenius, 52 Ill. 236 and Foval v. Hallett, 10 Brad. 265—did not refer to evidence of the belief or disbelief of the bystanders as to the truth of the charge, but held that where the words are ambiguous, it is competent to prove by them the sense in which they understood them. Here there was no such ambiguity, nor any difference as to the sense in which they were understood. A director charged the president, in the presence of the stockholders of the creamery company, with the crime of stealing its sour milk, and the circumstances showed he meant it. Appellee introduced evidence that the slander had gone abroad, but none to prove that the charge was believed to be true, or to show any actual damage. From such a charge the law implied both malice and damage, and he sought to recover what the jury should assess as proper in view of the whole case shown. The only plea filed was the general issue, which has been held to admit that the charge, if made, was not true; but defendant sought by the questions disallowed, to mitigate the damages implied, by proof that the bystanders who heard the charge made, other than the witnesses, as well as the witnesses themselves, did not believe it. This was not proper cross-examination;

nor if the matter was admissible at all by way of defense, was it the best evidence, as to others than the witnesses, of the fact in question being necessarily hearsay.

But we understand the rule to be that in such case the evidence in mitigation must be of facts or circumstances which tend to disprove malice, but do not tend to prove the truth of the charge. Regnier v. Cabot, 2 Gilm. 34 (39–40); Thomas v. Dunaway, 30 Ill. 373. It is clear that the fact here sought to be shown would not tend to prove the truth of the charge, but we are unable to see that it would tend to disprove malice. The ruling of the court was therefore right.

Appellee's general reputation was not attacked. Without evidence either way it would be presumed to be good, but his position as president of the company and otherwise shown, tended positively to prove it. Appellant also was of fair standing socially and possessed of real and personal property worth $15,000. In Miller v. Johnson, *supra*, a like case and no more aggravated, the verdict for $1,000 was deemed not excessive. The record here showing no material error the judgment will be affirmed.